**TECHNOGRAPH PRINTED CIRCUITS, LTD., et al., Plaintiffs,**

v.

**PACKARD BELL ELECTRONICS CORP. et al., Defendants.**

Nos. 62–1256–PH, 63–14–PH, 63–48–PH, 63–76–PH, 63–85–PH, 63–86–PH, 63–108–PH, 63–109–PH, 66–1993–PH (2837–SD–K), 66–1992–PH (2836–SD–K), 66–1994–PH (2839–SD–K), 66–1995–PH (2840–SD–K) and 66–1996–PH (2844–SD–K).

United States District Court
C. D. California.

Aug. 8, 1968.

Whann & McManigal, Los Angeles, Cal., for plaintiff Technograph.

Smyth, Roston & Pavitt, Los Angeles, Cal., for defendants Packard-Bell, Northrop and Daystrom.

Harris, Kiech, Russell & Kern, Los Angeles, Cal., for defendant Beckman.

Mellin, Hursh, Moore & Weissenberger, San Francisco, Cal., for defendant Lockheed.

Spensley, Horn & Jubas, Los Angeles, Cal., for Electronic Specialty.

Huebner & Worrel, Los Angeles, Cal., for Bureau of Engraving.

Fulwider, Patton, Rieber, Lee & Utecht, Los Angeles, Cal., for Electronic Engineering.

Merrill L. Robertson, San Diego, Cal., for Ryan Aeronautical.

Woolley, Collins & Ward, La Jolla, Cal., for Non-Linear Systems.

Thomas Moran and Wm. Bruner, San Diego, Cal., for Cubic Corp.

Carl R. Brown, San Diego, Cal., for Electralab Electronics.

## MEMORANDUM OPINION

HALL, District Judge.

1. The above 13 of 15 patent cases were filed in what, at the time of filing, was either the Central Division, or the Southern Division, of the then Southern District of California, in late 1962 and early 1963. Appropriate orders have been made transferring them so that they are all now consolidated, on the issue of validity only, and pending in what is now the Central District of California at Los Angeles, before the undersigned Judge.[1]

They are part of the more than 70 cases filed by the same plaintiffs in 17 different districts located in 7 Circuits throughout the United States which involve one or more of the same three patents in issue in some, or all, of the 15 cases pending here.

2. The cases in Los Angeles were originally assigned to the calendar of Judge Yankwich in this Court, but when he became ill in 1963 the undersigned as the then Chief Judge called them on Judge Yankwich's calendar and they, as well as the cases originally filed in San Diego, were, ultimately, on October 21, 1964, transferred to the regular calendar of the undersigned for all further proceedings.

3. The matter immediately before the Court is defendant Lockheed's motion for the imposition of sanctions, under F.R. Civ.P. 37, in Case 63–48, joined in by all of the defendants in the other cases in the caption. The sanctions sought are against plaintiffs and are in the alternative (1) to hold the plaintiffs in *contempt*, (2) to *strike* the response of the plaintiffs to an Order of the Court for production and hold the produced material inadmissible, or (3) in the alternative to dismiss the actions. The bases for seeking the sanctions are the failures of plaintiffs to comply with the Court's Orders directing plaintiffs to make discovery in connection with defendant Lockheed's motion for summary judg-

1. See Appendix I for the Court's disposition of plaintiffs' contention that the San Diego cases were improperly transferred from San Diego.

ment, joined in by all the other defendants.

4. Due to the great number of lawsuits pending in different Districts involving these same patents, resulting in a monumental proliferation of documents, innumerable motions here, Maryland, Chicago and elsewhere, and several opinions of different United States Courts of Appeals, as well as the nature and severity of the sanctions sought, it is necessary to state in brief outline a history of the litigation concerning these patents.

5. The patents involved are:

(1) Reissue 24,165 (expired, February 2, 1963)

(2) 2,441,960 (expired, May 25, 1965)

(3) 2,706,697 (application dated December 17, 1951)

All the cases here involve No. 24,165.

Seven involve all three patents.

Five involve No. 2,706,697 in addition to No. 24,165.

Three involve No. 24,165 only.

Twelve involve No. 2,706,697, and one or both of the others.

6. One person, known as Eisler, was the original applicant. He filed an application in England some *twenty-five years* ago, viz.: on February 2, 1943; and on February 3, 1944, he filed an identical application, No. 520,991, in the United States, which issued as patent No. 2,441,960 on May 25, 1948. It expired in 1965. On February 27, 1948 a divisional application was carved out of the original application 520,991, which divisional application took the number 11,798, out of which patent No. 2,257,568 issued on February 26, 1952, and was subsequently reissued as Reissue No. 24,165, which under Section 10 of the Boykin Act (60 Stat. 940, at 944) expired February 2, 1963, twenty years after filing the first application on February 2, 1943 in Great Britain. Divisional Application 11,798 was further divided on December 17, 1951 by Application 261,989, which resulted in the issuance of Patent No. 2,706,697 on April 15, 1955. Thus, *according to plaintiffs,*[2] all three patents *"stem"* from the original British Application on February 2, 1943 and its American duplicate of February 3, 1944, No. 520,991, resulting in now expired patent No. 2,441,960.

7. In view of the fact that the determination of the motions requires an inquiry into the bona fides of counsel, it is important to note that *Walter J. Blenko* and his firm in Pittsburgh, Pennsylvania, are the actual counsel for the plaintiffs in all the litigation, appearing by special permission in this litigation, although local counsel appears on the pleadings. Upon inquiry from this Court of local counsel here as to whether or not he was the author of a certain document in the files, he replied that he was *"not the author of anything"* filed in the cases here.

8. In passing, it is also noted (though not of controlling significance) that the plaintiff's ("Technograph, Inc.," organized in 1951) "sole business is the sublicensing of these patents and the supplying of technical 'know-how' in the etched foil technique; it does no manufacturing itself."[3] It maintains a litigation fund of a sizeable amount. Its employees are limited to the executives and several stenographers.

9. Of the many cases filed throughout the Country, the first case coming to trial involved *all three patents.* It was filed in the District of Maryland on May 25, 1959 by the plaintiffs herein against the Bendix Corporation. The case was on trial before the Honorable Dorsey Watkins from October 2, 1961 through December 7, 1961. There were two days of argument and 600 pages of briefs. It was submitted on February 2, 1962. More than 1,000 exhibits were introduced. The transcript covers over

2. P. 20 of plaintiffs' Pre-Trial Memorandum filed September 22, 1960 in the Maryland cases.

3. From p. 5 of plaintiffs' Pre-Trial Memorandum filed Sept. 22, 1960 in the Maryland cases.

4,000 pages. On May 27, 1963 Judge Watkins filed a long opinion exhaustively analyzing contentions of the parties and held all three patents invalid on several grounds (Technograph Printed Circuits, Ltd. v. Bendix Aviation Corp., D.C., 218 F.Supp. 1 to 67). Without reaching any of the other things covered by Judge Watkins' opinion, the Fourth Circuit affirmed the District Court on the ground of obviousness on January 17, 1964 (327 F.2d 497), and certiorari was denied on October 12, 1964 (379 U.S. 826, 85 S.Ct. 53, 13 L.Ed.2d 36).

10. While only a limited number of claims in each of the three patents were "declared on" in the Maryland case, and a more limited number were used as "example" claims, the District Court of Maryland *had* to, and *did*, examine the entire history of all the applications, and the various claims made in them, the additions and amendments thereto, and the entire history of all three patents in the Patent Office, as well as the prior art. The scope of his opinion is indicated by the comment at 218 F.Supp., p. 24, where it is stated:

"When the available literature, both patents and publications, not cited, is considered, and also the ability of persons unaware of the alleged inventions to reach the same results by the same means, the court has no hesitation in holding the *patents, and* the claims in suit, to be invalid."

[italics supplied] And at page 31:

"The court holds that the Stevens and Dallas application—not considered by the Examiner—of itself invalidates the *Eisler patents*, either as an anticipation, or showing lack of novelty." [italics supplied]

11. One gets the impression from reading the opinion and examining the files and records, including the pre-trial Orders in the Maryland case, that it was to be a "test" case and that the "example" claims were to stand as "example" claims for all the claims. Moreover, on February 26, 1963, while the case was still under submission in Maryland, the plaintiffs filed a *Memorandum in this Court* which stated, among other things, that it had *"prosecuted the Bendix case diligently,"* and that a *test case was filed against Bendix in the United States District Court for the District of Maryland on May 25, 1959, for infringement of the three patents in suit here. "The Bendix case is avowedly plaintiffs' test case."* [italics supplied] These statements of plaintiffs' counsel, the exhaustive record, and the long and meticulous opinion of Judge Watkins, dispel any question but that the Maryland case was tried diligently, was considered thoroughly and exhaustively by the trial court, that the plaintiffs had their "days in court," and suggest to the thoughtful reader that if there was anything else in favor of validity concerning any claim in any of the patents in addition to what the plaintiffs produced, counsel would have done so.

12. The cases in the Northern District of Illinois at Chicago proceeded to the point where this Court was advised in late 1963 they would shortly go to trial, and after hearing from all of the parties, this Court made an Order on December 3, 1963 staying all further proceedings in the cases in this Court until further order of this Court because of the imminence of the trial in Chicago. The cases in Chicago proceeded on a motion for summary judgment which was granted on or about December 30, 1964. It was appealed to the United States Court of Appeals for the Seventh Circuit which filed its final opinion on March 22, 1966 (Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 356 F.2d 442), reversing the District Court for the Northern District of Illinois in granting the motion for summary judgment; certiorari was denied June 10, 1966 (384 U.S. 1002, 86 S.Ct. 1925, 16 L.Ed.2d 1016). Even though that opinion is not binding on this Court, it points to the need for, and the legality of the discovery orders thereafter made by this Court when it stated, *inter alia*,

*"It is true that the district court here had the Bendix opinion to consider,*

*but that is a far cry from having before it the record of the testimony in that case or finding that plaintiffs have no new or additional evidence."* (356 F.2d 442, at 447)

Thereafter all of the Maryland files, records, exhibits, and transcripts were sent to the Clerk of this Court, and have been, and are available to the parties and the Court.

13. Prior to the decision of the Seventh Circuit, this Court called the attention of the Committee on Multiple Litigation of the Judicial Conference of the United States to the many cases filed by Technograph in different Districts throughout the United States involving the same or some of the three patents here.

14. After the decision of the Seventh Circuit in the Chicago cases, that Committee turned its attention to the problems arising from those cases. Thereupon a judge was assigned to the Chicago cases and to the problem of avoiding numerous trials on the same issues in different Districts with a possibility of incongruous results, viz., the same patent being solemnly declared valid with a large judgment for infringement and an injunction, at the same time other courts held it invalid. Someone came up with the idea in Chicago that a class action under F.R.Civ.P. 23 might be the solution of avoiding the threatened repetitive and expensive litigation which would be burdensome and wasteful of judicial, as well as time and energies of the parties and their counsel with exactly opposite judgments. The Honorable William Becker of the Western District of Missouri is currently assigned to those cases. After many hearings and meetings of the Committee, some of which this judge attended, a class action order was formulated and promulgated in the Chicago Technograph cases, on February 28, 1968, holding those cases to be class actions, under F.R.Civ.P. 23, and designating two subclasses for each patent (a total of six sub-classes); the first class as to each patent may be generally described to be those who have been notified of, but not sued on, alleged infringement; and the second class as to each patent, are those who have suits pending against them for damages for infringement. The order also provided for publication of notice of the pendency of the class action in the *Wall Street Journal,* with 45 days after the publication set as the time for those who had suits pending against them to "opt out" of the Chicago class action under F.R.Civ.P. 23(c) (2). The notice was published on May 20, 1968. The court is advised that the defendants in all of the above 13 suits pending in this Court have given the notice provided for in the class action order of February 28, 1968 in the Chicago cases that they desire to "opt out" of those cases.

15. At a hearing in the within cases in October 1967, the plaintiffs offered to dismiss all the cases concerning two patents (24,165 and 2,441,960) *if* the defendants would consent to become parties to the class action in Chicago; putting it another way, plaintiffs' counsel threatened to continue all the suits here on all three patents, unless the defendants agreed to go to Chicago as a member of the class action on patent No. 2,706,-697, or impliedly take a license under that patent. The defendants indicated then that they would refuse. On April 5, 1968 a similar offer—or threat—was made to the defendants in the three cases still pending in Maryland. The Court is now in receipt of a copy of a dismissal of the Chicago cases, so far as patents 24,165 and 2,441,960 are concerned.

16. All of the above entitled defendants have joined with Lockheed in its (1) motion for summary judgment, or filed a separate one, and (2) have also joined with Lockheed in its motions for sanctions, to which motions this Memorandum and Order are addressed.

17. On September 27, 1965, defendant Lockheed, in Case No. 63-48 of this Court, filed a motion for summary judgment and for an order modifying the stay order of December 3, 1963 for the limited purpose of permitting a hearing on their motion for summary judgment

on the grounds of (1) estoppel by the Maryland judgment and (2) anticipation. No action was taken on that motion until after the denial of certiorari in the Chicago case when, on January 17, 1967, this Court vacated the stay and restored all the matters to the calendar and consolidated all cases on the question of validity only. *This order reactivated Lockheed's motion for summary judgment.*

18. All of the cases in the Southern Division at San Diego had a stipulation filed in them which purported to dismiss them but which would permit either party to restore the cases to the calendar at any time in the same status as the date of the stipulation, without regard to any statute of limitations, laches, estoppel or otherwise. This Court vacated that Damoclean stipulation, restored the matters to the calendar, and transferred them as indicated in paragraph one hereof.

19. On February 6, 1967, at a hearing with all counsel present, the Court inquired of counsel as to all undisposed of matters. It then appeared that interrogatories had not been made by plaintiffs in the cases filed in San Diego (then and now pending in Los Angeles), but that plaintiffs, on September 20, 1963, had filed interrogatories both on the question of validity and infringement in the above case, No. 63-48, and that on October 15, 1963 [almost five years ago] answers had been filed by defendants, except to the interrogatories relating to infringement.[4] Similar interrogatories and answers were filed in the other Los Angeles cases. At that time the Court indicated its intention to proceed to a final disposition of Lockheed's motion for summary judgment on validity before considering other matters, and set up a schedule which as modified became the Order of March 13, 1967 (Appendix I).

20. This Schedule, either by stipulation of the parties, or on order of the Court because of its order for discovery filed May 17, 1967 (Appendix II), was extended from time to time until on October 18, 1967 (Appendix III) the Court made an Order finalizing that Schedule.

21. The Order of March 13, 1967 also permitted any party to copy or reproduce or refer to any material or matter, or evidence, or document, exhibit, argument, transcript, or thing which had been filed, introduced in evidence or used in any manner in the Maryland case.

22. In the meanwhile, on February 20, 1967, Lockheed, in support of its motion for summary judgment, filed a motion to compel "plaintiffs to show and produce details of any evidence above and beyond the evidence they presented in" the Maryland case, "which plaintiffs intend to present at the consolidated trial on validity of this cause." Plaintiffs filed an opposition thereto on April 3, 1967 to which Lockheed replied on April 7, 1967. These were not available to the Court when the motion was heard and argued on April 10, 1967, at which time the Court indicated Lockheed's motion would be granted, and again called attention of plaintiffs' counsel to his right to seek and get discovery relating to validity if it was necessary for decision of the motion for summary judgment.

23. On May 17, 1967, on motion, after briefs and argument, and briefs pro and con on the form of the order, the Court made its written Order on the plaintiffs to produce evidence. A copy of it is attached as Appendix II to this Memorandum.[5] That Order and the Order of

4. Thus the repeated complaint of plaintiffs that it has been denied "normal" discovery falls flat. This is particularly so in view of the fact that plaintiffs have made no motion to be relieved of any order relating to discovery since the stay was vacated in January 1967. See also Appendix I which permitted discovery by plaintiffs on motion.

5. In plaintiffs' response to the Order to Produce (Appendix II), plaintiffs assert that this Court made the Order to produce without "consideration of the papers filed by Technograph in opposition to the original motion," and that the statement in the Order of May 15 that the Court considered them is untrue. This abrasive statement of plaintiffs' counsel

October 18, 1967 (Appendix III) are the two Orders which defendants assert the plaintiffs have flouted and call for sanctions.

24. Attached to a stipulation of July 24, 1967, extending the time of Plaintiffs to Produce to September 12, 1967, was an Affidavit of one Shortt (President of plaintiff), in which he stated he had been collecting data since 1955, and that "the foregoing information is presently contained in *six four drawer filing cabinets, twenty-four book shelves, and several large library book-type bins,*" and set forth a list of *over seventy articles, books, pamphlets, documents, and other printed material, without in any manner setting forth, or even attempting to set out the contents, relevance, materiality, or competency of any of* such material as to *any one* of the *patents,* or *claims (40)* in suit, or how, or in what particular such, or any matters, differed from the evidence produced in Maryland, or why it was not produced, or not available for production there. The plaintiffs also, then, complained they had not had discovery from defendants. The facts are contrary as set forth in paragraph 16 hereof. The plaintiffs in no manner asked for, or suggested that plaintiffs be allowed to make discovery as permitted under the Order of March 13, 1967 (Appendix I).

25. On or about October 16, 1967 the parties presented another stipulation permitting further time for plaintiffs to respond to the Order of May 15, 1967 to Produce (Appendix II), which the Court signed.

26. But after further consideration, and, in order to get these long-delayed cases on the move toward some final determination, and to get some sense out of plaintiffs' repeated obfuscations and generalizations, the Court, on October 18, 1967, made its Order which is Appendix III.

27. It required the plaintiffs to "point up" their contentions as to *what* new evidence they had and *how* they related to *what* claims of *what* patent.

28. On November 28, 1967, plaintiffs filed what they designated "Response by Technograph to Order to Produce Evidence filed May 17, 1968,"[6] and at the same time filed with the Clerk a large cardboard box about the size of half-a-bushel, filled with books, patents, documents, papers and some illegible and unintelligible taped film, but with no identification of any kind.

28a. A list of some documents was included in the "Response" which it stated as "aggregating over 3000 pages" (1. 22, p. 4, Response), but no identification by number, *no* relation to what was in the box (*if* they were in the box), no designation "with particularity and specifically," what patents each, or any *of them,* or what part of each or any of them, related to what patent, or what claim of what patent, or how they, or, any of them did so, if at all, or whether

should be ignored, but cannot be for the reason that it is untrue. The Court examined both, plaintiffs' Memorandum and defendants' in the interval between April 10, the date of the argument, and May 17, 1967, the date of the Order. The Court also examined plaintiffs' objection to the form of the Order filed May 1, 1967. Plaintiffs' Memoranda at best were equivocal and non-convincing. Prior to this Memorandum the Court has re-examined all the pleadings, motions, briefs, transcripts, affidavits and other matters in the files of these cases. Plaintiffs' counsel is quite evidently unfamiliar with, or disdainful of, the files

here, as they contain a handwritten note from Puerto Rico [where this judge was sitting by assignment] to the Clerk which reads as follows:

"Monty:—

"Herewith is copy of the Order Lodged Apr. 13, 1967—which now becomes the Original, because I have signed it and dated it today after re-examination of plaintiffs objections lodged May 1.

"Note changes, then make Xerox copy and send to all counsel.

H."

6. It is noted that plaintiffs made no reference to the Order of October 18, 1967.

or not any of them, or what part, if any, was or was not in evidence in Maryland, or what was, or was not, available for evidence at that time in that case. The plaintiffs did a *"snowjob."*

28b. One book, "Printed Circuits Handbook" (published in 1967), is in the box [544 pages; 312 illustrations].

28c. Plaintiffs' Response (p. 10) refers specifically to 71 pages of that book without more than general contentions as to its teaching, and with no reference to what claims of what patents are covered, and then concluded,

> "The *document taken as a whole* [544 pages, 312 illustrations] evidences that the Eisler inventions were not obvious at the time they were made and that the claims speak in definite and certain language, thereby showing that the contrary holdings of validity in Bendix under 35 U.S.C. 102, 103 and 112 are wrong in fact." [7]

28d. Plaintiff asserts that it has several experts who did not testify at the Maryland trial and that their opinion constitutes new "evidence."

28e. This Court cannot agree. In the first place, the opinions which the experts express are in substance nothing more or less than saying that Judge Watkins was wrong. None of the experts asserts that he has read the evidence and examined the physical exhibits or that he was present throughout the trial and heard the witnesses and saw the evidence, which Judge Watkins did. Under such circumstance any general opinion by another expert than the ones who testified at the trial that the Judge who heard all of the plaintiffs' and defendants' previous experts is wrong, cannot rise to the dignity of *"new evidence"* without more, a great deal more, in fact, as specified in paragraph 28a above.

28f. Furthermore, in the many patent cases this Court has tried, there have been experts of equal forensic positiveness who have testified exactly the opposite to one another. To follow plaintiff's contentions to their logical conclusion, this Court would have to grant a new trial in every patent case when either the plaintiff or the defendant produced a new "expert" who would swear that in his opinion this Court (and the appellate courts as well) was wrong. The law does not require this injustice.

28g. Complete text of plaintiffs' "Response" is attached as Appendix IV.

29. If the foregoing seems long, it is necessary to an understanding of what the trial judge must adjudicate, and of the attitude of plaintiffs' counsel toward these cases, and the United States District Court, as evidenced by Mr. Blenko's Response to Judge Watkins, in presently pending cases in Maryland, where in an inquiry of the Judge about the status of the cases in California, Mr. Blenko stated, "The cases *were brought back again onto the active docket by Judge Hall, and there have been a number of*

7. On June 10, 1968 plaintiffs filed what it termed "Supplemental Response By Technograph to Order to Produce Evidence Filed May 17, 1967," indicating that in May 1968 it took the deposition of one Danko, an employee of the U.S. Signal Corps, who disclosed new information. The Supplemental Memo is long (more than six months) past the due date, and the clerk is instructed to enter a minute order striking it for that reason. Furthermore, that is no showing that such evidence was not available to plaintiffs in *Bendix* in Maryland. The contrary is suggested by Plaintiffs' Pre-Trial Memorandum filed September 22, 1960 in the Maryland case, where it is stated (p. 31): "And when Dr. Eisler visited Fort Monmouth—Mr. Danko treated him as a celebrity who had made a very great contribution to the art." Moreover, Danko's deposition was taken in the Court of Claims suit on June 27 and 28, 1967, and he testified in the Maryland case.

*proceedings which have led to some scuffling around.*" (italics supplied)

30. Before reaching the question of whether or not sanctions can, or should, be imposed, it is first necessary to determine whether or not the doctrine of *res judicata* will lie on a motion for summary judgment in a patent case where the previous judgment held the patents invalid.[8]

31. Two cases most often relied upon for the proposition that estoppel by judgment of invalidity in patent cases, in that *res judicata* will not apply, are: Triplett v. Lowell (1936), 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949; Aghnides v. Holden (1955, 7 Cir.), 226 F.2d 949.

32. Triplett v. Lowell was a case on certiorari from the Fourth Circuit. The Third Circuit had held invalid two patents. Certiorari was denied on one because it was too late (Dubilier Condenser Corp. v. Radio Corp., 287 U.S. 648, 53 S.Ct. 96, 77 L.Ed. 560); and the other, for unstated reasons (287 U.S. 650, 53 S.Ct. 96, 77 L.Ed. 562). The Maryland District Court (Fourth Circuit) in the patent infringement suit filed there on the same patent dismissed the case "on the ground of inadequacy of the *disclaimer* of claims held invalid" in the Third Circuit. The Fourth Circuit reversed the Maryland District Court (77 F.2d 556). The Supreme Court affirmed the Fourth Circuit, and stated certiorari was granted "to resolve questions as to the scope and effect of the *disclaimer statute*, R.S. §§ 4917, 4922, 35 U.S.C. §§ 65, 71 [35 U.S.C.A. §§ 65, 71] * * *." (italics supplied)

33. Thus all statements contained in Triplett v. Lowell which go beyond the narrow question stated and decided by the Supreme Court concerning the effect of filing, or failing to file, a disclaimer, and the adequacy or inadequacy of such disclaimer on claims judicially held to be invalid were not necessary to the decision. Under time-honored principles of law such statements must be regarded as dicta. This is particularly so in view of the fact that the disclaimer statutes had then been in force without change since their enactment in 1870 (16 Stat. 206). They were subjected to "substantive" and substantial changes when the Patent Statute was revised in 1952.

34. Moreover, *Triplett* was decided in 1932, six years before the adoption of the Federal Rules of Civil Procedure, which brought into the law (F.R.Civ.P. 8) the concept that a complaint that merely stated "a claim for relief,"[9] instead of a cause of action, is sufficient to force any defendant to expend the time, money and energy defending litigation based on the flimsiest and frequently the most fanciful and far-fetched "claims for relief" which can be imagined. In a patent case the plaintiff starts off with the presumption of validity of the patent. Defending a patent case is particularly burdensome.[10] Even before a defendant gets into discovery he is required to search the prior art to include it in his answer. And, there are

8. It is not necessary to reach the question as to whether or not the doctrine would apply *if* the patents were held *valid* in a previously adjudicated case, because the considerations would be much different; a defendant in a new case may have made greater research of prior art, or done any one of dozens of things which the previous defendant, either through penury, or sheer inability, did not, or could not produce. It is not unknown that a patent owner will sue a "pigeon" who will readily (for a consideration) stipulate that the patent is valid and that a judgment may be entered to that effect. To guard against that chicanery, this Court, when such a stipulation is presented, inserts that the patent "is valid as between the parties to this suit *only*."

9. Conley v. Gibson (1957), 355 U.S. 41, at 45, 78 S.Ct. 99, 2 L.Ed.2d 80; Corsican Productions v. Pitchess (9 Cir. 1964), 338 F.2d 441, at 442.

10. Some plaintiffs have filed as many as 1200 interrogatories.

*more* than *one hundred prior art patents cited in this case,* including some foreign countries, including Russia.

35. Likewise, F.R.Civ.P. 56, providing for motions for summary judgment, was not in effect, or permissible under the law in 1932. Certainly if the laudable purpose of the Federal Rules of Civil Procedure as set out in F.R.Civ.P. 1 that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action" is to be carried out, then summary judgment on the ground of *res judicata,* if otherwise proper, should be granted in patent cases, which, against the statutory presumption of validity, are notoriously long and are almost unbelievably costly to defend.

36. To take as law the dicta in *Triplett*[11] would sensibly and logically require each district court to retry on a "claim for relief" every patent case against a *different* defendant *the day after* the Supreme Court held all claims *invalid,* as it would require them to retry validity after another district court or another Circuit had held them invalid. To follow it in these cases would mean, not that the plaintiff had due process of his traditional "day in court" (here—two months in Maryland), but that he would have at least seventeen, if not seventy trials in different courts. It would mock the claim that "law is a rule of action," and that there must some day be an end to litigation.

37. Aghnides v. Holden (7 Cir., 1955), 226 F.2d 949, turned on the question of mutuality, and held that, to invoke the doctrine of *res judicata,* the parties must be the same as in the previous case. In the first place, a decision of one Circuit Court is not binding on the courts of another Circuit (Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856), and summary judgments under F.R.Civ.P. 56 are recognized in patent cases in this Circuit, Park-In-Theatres, Inc. v. Perkins (9 Cir., 1951), 190 F.2d 137; Engelhard Industries, Inc. v. Research Instrumental Corp. (9 Cir.), 324 F.2d 347; cert. den. 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (rep. below D.C., 196 F.Supp. 138); Oregon Saw Chain Corp. v. McCulloch Motors Corp. (9 Cir., 1963), 323 F.2d 758; Barkeij v. Lockheed Aircraft Corp. (9 Cir., 1954), 210 F.2d 1, at page 2; Cf. Allen v. Radio Corporation of America (D.C.Del.1942), 47 F.Supp. 244.

38. The doctrine of estoppel by judgment is recognized where there is not mutuality, in this Circuit, and where the previous judgment has gone against the plaintiff who had ample opportunity to prepare, and to try his case, but who came forward with no new or different evidence in the second case; United Air Lines, Inc. v. Wiener, 335 F.2d 379, 404 (9 Cir., 1964), which adopted the opinion of this Court as its own on that subject, which is reported at United States v. United Air Lines, Inc., 216 F.Supp. 709, pp. 725 to 729.

39. Moreover, Aghnides v. Holden, is weakened, if not modified by the Seventh Circuit in its decision reversing the District Court in Chicago on its summary judgment holding the patents invalid (Technograph, etc. v. Methode et al. (1966), 356 F.2d 442, cert. den. 384 U.S. 1002, 86 S.Ct. 1925, 16 L.Ed.2d 1016), when it stated at page 447 of 356 F.2d:

> "It is true that the district court here had the Bendix opinion to consider, but that is a far cry from having before it the record of the testimony in that case or finding that plaintiffs have no new or additional evidence."

40. In Nickerson v. Kutschera et al., 390 F.2d 812 (March 1968), the Third Circuit, while reversing the trial court, adhered to its position that the moat

11. *Triplett* considered a case coming to the court from the Seventh Circuit on a certified question which the court declined to answer and dismissed the matter. Hence that part of the opinion is not in point here.

of mutuality can be bridged in the application of *res judicata,* and referred the case back to the trial court to determine the "nature of Nickerson's 'additional evidence,'" and, "whether it shows that an entirely different factual basis supports the patent's validity or there exists a new 'cause of action.' It thus can not clearly be said on this record that Nickerson has fairly had his 'day in court' in the *Bearfoot* (previous) litigation. In any event such a determination must first be made by the district court."

41. The Court of Claims in Technograph Printed Circuits, Ltd. v. United States (1967), 372 F.2d 969, 178 Ct.Cl. 543, refused to breach "the iron law of mutuality" (372 F.2d p. 972) in favor of the Government in the case where the United States attempted to apply the doctrine of *res judicata* based on the Maryland judgments holding these same patents invalid. But the court in that case did indicate that one of the grounds for rejecting *res judicata,* was the plaintiff's declaration *"that it possesses and expects to present new material which was not used in the earlier litigation in Maryland and the Fourth Circuit"* (p. 979), and also stated (p. 976): "If appraisal of the factors pertinent to the concrete case plainly teaches that the prior judgment should be conclusive, mutuality may well be held [to be] unnecessary"; (italics supplied)

42. The facts "pertinent" to this concrete case are, *just what* new and additional evidence does the plaintiffs have which they did not and could not present in the first case, and *how* and *why* are they material to *what* element or *what claims* of the patents in suit?

43. It also pointed out (p. 979) "unlike the defendant in Zdanok v. Glidden Co. (2 Cir., 327 F.2d 944; cert. den. 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298), Technograph did not designate the Fourth Circuit adjudication as its 'test case', and 'everyone (did not) expect(ed) their rights to be governed by the court's interpretation * * *' in the first case."

44. As pointed out in paragraph 11 hereinabove, the plaintiffs in these cases in this Court filed a statement, before the Maryland judgment came down against the plaintiffs, that the *Maryland case was "avowedly plaintiff's test case."* This statement quite evidently was not brought to the attention of the Court of Claims, and from the language above quoted in that case, the result might have been different if it had.

45. From a review of the above cases, it can be fairly concluded that it is the law of the Ninth Circuit, the Seventh Circuit, and the Third Circuit that (1) mutuality is not an absolute bar to the invocation of the doctrine of *res judicata* and (2) it may be invoked on a motion for summary judgment by one not a party to the previous litigation, *if there has been a full and fair trial of the identical issues,* (3) *an adjudication thereon, and* (4) *if the party against whom it is sought to be invoked has no new, other, or different evidence than presented in the previous trial, which he could not then have produced, and if the trial court finds to that effect.*

46. When the motion for summary judgment was presented to this Court, and the ground of estoppel by judgment was raised against the plaintiffs, the Court was thus under the primary duty of ascertaining those things and making a determination as to whether or not there *was any new or other evidence* which was not and could not have been produced at the previous trial; and if so, just what that evidence was and just how it bore upon the issues raised. This was particularly so in view of the fact that a motion to consolidate the Lockheed case with another involving the same patents had been denied by the judge to whom the cases were previously assigned, and the Court was confronted with trying the same issue of validity *seventeen* times, in the *seventeen* different cases, if plaintiffs'

contentions as to the inapplicability of *res judicata* were correct. It was to the end of putting the matters raised on the motion for summary judgment in a state where a judicial decision could be reached, that the various orders hereinabove referred to were made. There is no doubt that such orders were proper under F.R.Civ.P. 56, and the general discovery rules of the Federal Rules of Civil Procedure. Nor is there any doubt but that a conscious, intentional, and wilful flouting of such orders permits the imposition of sanction under F.R. Civ.P. 37.

47. The Court specifically finds that the Response of plaintiffs of November 28, 1967, together with the unindexed box of documents, papers, etc., was a wilful, intentional, and conscious flouting and disobedience of the Orders of this Court of May 17, 1967 and October 18, 1967. United States for Use of Weston & Brooker Company v. Continental Casualty Co. (4th Cir., 1962), 303 F.2d 91; Trans World Airlines Inc. v. Hughes (2nd Cir., 1964), 332 F.2d 602. Those acts, in light of the whole history of this litigation, the many suits filed, the claim that the Maryland cases were a "test" case, the Response being entitled an answer to the Order of May 17, 1967, without mention of the Order of October 18, 1967, the statement by Mr. Blenko, plaintiffs' counsel, on April 5, 1968, that the proceedings here were just "scuffling around," together with the threat that the parties *must* litigate two patents *or* else come to Chicago, together with many other things, amount to a callous, cynical disdain of this Court and the rights of the parties and of the proceedings here. They warrant the severest condemnation.

48. For the foregoing reasons the Court concludes that it is proper to, and does, impose the sanctions authorized by F.R.Civ.P. 37(b) (2) (iii) by dismissal of the actions for disobedience to the Court's Orders of May 17, 1967 and October 18, 1967.

49. The Court will make and enter a judgment of dismissal with costs in favor of the defendants, and will reserve jurisdiction on any motion which at the conclusion of the appeal period may be made for attorney fees for the defendants' counsel.

## APPENDIX I

**TECHNOGRAPH PRINTED CIRCUITS, LTD., et al., Plaintiffs**

**v.**

**PACKARD BELL ELECTRONICS CORP., et al., Defendants.**

**Nos. 62-1256-PH, 62-1656-PH, 63-14-PH, 63-48-PH, 63-76-PH, 63-85-PH, 63-86-PH, 63-108-PH, 63-109-PH, 66-1991-PH (2829-SD-K), 66-1992-PH (2836-SD-K), 66-1993-PH (2837-SD-K), 66-1994-PH (2839-SD-K), 66-1995-PH (2840-SD-K), and 66-1996-PH (2844-SD-K).**

United States District Court
S. D. California, C. D.

March 13, 1967.

## ORDER FIXING SCHEDULES ON MOTION FOR SUMMARY JUDGMENT

HALL, District Judge.

The above-entitled matters came on for hearing on the 6th day of February, 1967, after notice to counsel of record for all parties upon the Court's Order dated and filed January 17, 1967: The defendants in the above-entitled matters, Non-Linear Systems, Inc., in Case No. 66-1993-PH (2837-SD-K), and Cubic Corp. in Case No. 66-1994-PH (2839-SD-K), did not appear and by their failure to appear waived any objection to the jurisdiction and venue of the above-entitled Court; the plaintiffs appeared by Whann & McManigal, Welton B. Whann, Esq., and Paul A. Beck, Esq., in all of the cases; Packard-Bell appeared by Smyth, Roston & Pavitt, Ellsworth R. Roston, Esq., and William H. Pavitt, Jr., Esq.; Hoffman Electronics appeared by Lyon & Lyon, Richard Lyon, Esq.; Beckman Instruments appeared by Harris, Kiech, Russell & Kern, Ford W. Harris, Jr., Esq., and Walton Eugene Tinsley, Esq.; Lockheed Aircraft ap-

peared by Mellin, Hanscom & Hursh, Harry G. Weissenberger, Esq.; Electronic Specialty appeared by Spensley, Horn and Jubas, Martin R. Horn, Esq.; Northrop Corporation appeared by Smyth, Roston & Pavitt, Ellsworth R. Roston, Esq., and William H. Pavitt, Jr., Esq.; Bureau of Engraving, Inc., et al., appeared by Merchant & Gould, John D. Gould, Esq.; Electronic Engineering appeared by Fulwider, Patton, Rieber, Lee & Utecht, Warren L. Patton, Esq.; Consolidated Systems appeared by Smyth, Roston & Pavitt, Ellsworth R. Roston, Esq., and William H. Pavitt, Jr., Esq.; Cohu Electronics appeared by Lyon & Lyon, Charles G. Lyon, Esq., and A. Mack Rodgers, Esq.; The Ryan Aeronautical Corp. appeared by Carl R. Brown, Esq., James R. Maurer, Esq.; and Earl F. Kotts, Esq.; Electralab Electronics appeared by James F. Price, Esq.; Daystrom appeared by Smyth, Roston & Pavitt, Ellsworth R. Roston, Esq., and William H. Pavitt, Jr., Esq.

Each of the defendants in Cases Nos. 66–1991 (2829–SD–K), 66–1992 (2836–SD–K), 66–1995 (2840–SD–K) and 66–1996 (2844–SD–K), while filing no written appearance or objection, did appear especially to object to and contest either or both the jurisdiction and venue of the Court to enter the "Order Vacating Stay and for Consolidation" filed January 17, 1967, and the Court's Order of January 16, 1967 "Vacating Order Approving Stipulation of Dismissal and Transferring Cases to Central Division of the Southern District of California (28 U.S.C. 1404(b))."

The Court heard the statements and arguments of all counsel for the parties who requested to be heard in relation to said (1) objections, (2) orders, (3) future conduct of said action, (4) outstanding undecided and pending discovery, and (5) other matters;

Now, therefore, good cause appearing,

It is hereby ordered as follows:

1. All objections to said Orders of January 16 and 17, 1967, are overruled and motions to vacate the same are denied.[1]

2. That General Order B of the United States District Court, Southern District of California, all Divisions, dated August 31, 1966 and filed September 7, 1966, insofar only as it transferred the above-entitled cases, numbered 62–1656, 63–14, 63–48, 63–76, 63–85, 63–86, 63–108 and 63–109, to the Central District of California as created by the Act of March 18, 1966 (80 Stat. 75), be and the same is hereby vacated and set aside so that said numbered cases will be and remain pending in the Southern District of California, Central Division (28 U.S.C. § 1405) as such District and Division existed prior to said Act of March 18, 1966, (80 Stat. 75), and all further proceedings in the cases enumerated in the title hereof (including the former Southern Division cases) shall be captioned in the same style and manner as the within Order.

3. Defendant Lockheed Aircraft Corp. shall have until May 1, 1967 to amend or supplement or support its pending motion for summary judgment in any manner it may be advised to do so, and to the extent that said defendant may file any such papers, said defendant shall (subject to the exception in paragraph 7(c) hereof) serve a copy thereof upon counsel for plaintiffs and defendants in each of the above-entitled cases.

4. Should any defendant, other than Lockheed, in any of the above-entitled cases desire to file its own motion for summary judgment, it shall do so on or before May 1, 1967, and (subject to the exception in paragraph 7(c) hereof) serve the same upon counsel for plaintiffs and counsel for said defendants prior to said date, together with the supporting affidavits, papers, etc. Or any defendant, by serving and filing a notice so to do on or before said date, may join with defendant Lockheed Aircraft Corp. in its pending motion for summary judgment as the same may be hereafter amended or supplemented.

1. See discussion following end of this Order.

5. Plaintiffs shall have until May 15, 1967 to serve upon all defendants herein and to file a motion or motions showing good cause, for an order of this Court permitting and ordering such discovery as plaintiffs can establish is necessary in order for plaintiffs properly to respond to such motion or motions for summary judgment, as contemplated by paragraphs 3 and 4 of this Order.

6. Plaintiffs shall have until June 5, 1967 to serve upon all defendants and to file in the above-entitled actions plaintiffs' papers in opposition to any and all motions for summary judgment provided for by this Order, whereupon the Court will set the matter for hearing.

7. (a) It is ordered that such parts of the pleadings, evidence, or other record in the case of Technograph, etc. v. Bendix Aviation Corp., 218 F.Supp. 1, being case Civil A. 11421 of the United States District Court, District of Maryland, which any party desires to produce in support of or in connection with any motion for summary judgment herein,[2] need not be certified, but may be reproduced for filing and service by Xerox or other similar method.

(b) To that end, it is further ordered that the Clerk of this Court send an authenticated copy of this order to the Chief Judge of the United States District Court of Maryland, who is hereby asked to consider this Order as a request to that Court that the entire record of said case, Civil A. 11421 of the District Court of Maryland, be transmitted to the Clerk of this Court to be retained by the Clerk of this Court for a period of 90 days from and after April 1, 1967, and such further time as the District Court of Maryland may permit; and

(c) It is further ordered, in that connection, that during said period of 90 days, or more as the case may be, the parties to the within litigation may have access thereto for the purpose of copying any portion thereof if they desire to file and serve any portion in support of the position of such party in said motions for summary judgment; or, *in lieu of serving* copies of such parts of said record on other parties, may notify all parties of reliance on such parts of said record by specifically and fully designating the same and filing and serving such designation upon all other parties to the within entitled cases at least 20 days in advance of the date set for hearing the motions for summary judgment.

8. Except as specifically permitted or ordered by the Court pursuant to motion or motions provided for in this Order, all discovery and other pending matters are hereby further stayed until thirty (30) days following the hearing and determination by the Court of any and all motions for summary judgment provided for by this Order, or until otherwise earlier ordered by this Court upon noticed motion by any party.

9. The Clerk of this Court is hereby directed to accept all papers hereafter filed by any party in any of the above-entitled actions, the first and captioned page of which shall be entitled as the within Order and may be Xeroxed in lieu of a ribbon copy, as otherwise required by the local rules of this Court.

10. This Order shall take the place of the Clerk's rough Minute Order of February 6, 1967.

## DISCUSSION IN RE VENUE

Venue relates to the power of a court within a certain geographical or territorial area. Jurisdiction, on the other hand, while including such power, is of a much broader scope. Both are limited by statute.

28 U.S.C. § 1338 grants exclusive jurisdiction to the district courts of any civil action arising under any act of Congress relating to patents. Title 28,

2. In Technograph, etc. v. Methode, etc. (1966, 7 Cir.), 356 F.2d 442, the court stated (p. 447): "It is true that the district court here had the *Bendix* opinion to consider, but that is a far cry from having before it the record of the testimony in that case or finding that plaintiffs have no new or additional evidence."

U.S.C. §§ 1391 to 1406, inclusive, deal with venue.

Because of the allegations in the complaints and admissions in the answers, hereinafter alluded to, the Court is not concerned in these cases with the question as to whether or not "doing business" (28 U.S.C. § 1391(c)) in the district constitutes the place where the defendant "resides" as used in 28 U.S.C. § 1400(b), which concerned so many courts before that question was set at rest in Fourco Glass Co. v. Transmirra Products Corp. (1957), 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786.

Section 1400 of Title 28, subdivision (b), provides as follows:

> "(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

The above section is in the disjunctive, that is to say, a patent infringement action may be brought in the judicial *district* where the defendant (1) *resides or* (2) where the defendant has (a) committed acts of infringement *and* (b) has a regular established place of business.

It is noted that nothing is said of *Divisions* in that section.

Those objecting to the transfer would have the Court substitute the word "division" for the word "district" in said section.

28 U.S.C. § 1404(a) provides:

> "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The question then is, could the actions filed in the Southern Division of the Southern District of California [as it existed prior to the effective date of the Act of March 18, 1966, 80 Stat. 75] "have been brought" in the Central Division of said district?

Depending on the facts of residence as shown by the pleadings, the answer is found in 28 U.S.C. § 1393, if applicable to patent cases.

28 U.S.C. Sec. 1393 provides, with relation to districts which have more than one division, as follows:

> "(a) Except as otherwise provided, any civil action, not of a local nature, against a single *defendant* in a district containing more than one division must be brought in the division where *he* resides.
>
> "(b) Any such action, against defendants residing in different divisions of the same district or different districts in the same State, may be brought in any of such divisions."

While the *Fourco Glass* case was concerned only with whether or not 28 U.S.C. § 1391(c) supplemented § 1400(b) of Title 28, there are cogent reasons for holding that § 1393 of Title 28 does not apply to patent cases, particularly to corporate defendants.

First, there is the positive holding that § 1400(b) "is the *sole and exclusive provision governing venue* in patent infringement actions." Stronger language is seldom found.

In Stonite Products Co. v. Melvin Lloyd Co. (1942), 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026, the court had under consideration the question whether the general venue provisions of the Judicial Code prior to the 1948 revision controlled over the then provisions relating to venue, which were carried over with only changes in wording without change of meaning into the 1948 revision. The prior Judicial Code provision and the present § 1400(b) grew out of the Act of March 3, 1897. 29 Stat. 695. The court unequivocally held that "Congress did not intend the Act of 1897 to dovetail with the general provisions relating to the venue of civil suits, but rather that it alone should control venue in patent infringement proceedings."

Next, is the reliance in the *Fourco Glass* case on the revisor's notes for the 1948 revision of the Judicial Code. This

reliance not only stands out in the opinion but is pointed up in the dissent (353 U.S. at 229, 77 S.Ct. 787). In footnote 8 of the *Fourco* case, 353 U.S. 227, 77 S.Ct. 791, approval is given to the statement of Mr. Barron, revisor of the 1948 Judicial Code, that "no changes of law or policy will be presumed from changes of language in revision unless an intent to make such changes is clearly expressed. Mere changes of phraseology indicate no intent to work a change of meaning but merely an effort to state in clear and simpler terms the original meaning of the statute revised"; and, of Professor Moore to the effect that "venue provisions have not been altered by the revision," in 1948.

The forerunner of 1393 was Section 53 of the Judicial Code of 1911 (1940 Judicial Code 114), which used the word "he." That word is continued in the revised section 1393(a) and not, it may be noted, in § 1393(b). Section 1 of Title 1 of the United States Code prescribes rules of construction of *"any"* Act of Congress and states that "words importing the masculine gender may be applied to females," but nothing is said to the effect that such words shall include corporations or legal entities other than an individual. In fact, the section provides that "the word 'person' may extend and be applied to partnerships and corporations." The 1947 and 1948 amendments to Sec. 1 of Title 1 still carry substantially the same requirement in the following language: "words importing the masculine gender include the feminine as well"; and, "the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."

Thus the continued use of the word "he" in Section 1393 in the 1948 revision would indicate from the revisor's notes approved by the Supreme Court in footnote 8 of the *Fourco Glass* case (p. 227, 77 S.Ct. 787) that no change in the venue provisions of Section 1393 was made by the 1948 revision of the Judicial Code. In view of the provisions of Section 1 of Title 1 of the United States Code, above-referred to, Congress, had it intended to make it applicable to corporations, could easily have used the word "defendant" instead of "he" in § 1393(a), particularly so because of the use of the word "defendant" earlier in the same sentence, and because subdivision (b) of § 1393 uses only the word "defendants." And had the revisors (as distinguished from Congress) intended to change the law to enlarge the right given in § 1393 (a) to defendant corporations, they surely would not have made the statements approved in footnote 8 of the *Fourco Glass* case. Sharp v. Commercial Solvents Corp. (D.C.Tex.1964), 232 F.Supp. 323, and Guy F. Atkinson Co. v. City of Seattle (D.C.Wash.1958), 159 F.Supp. 722, are respectable authority in support of the proposition that § 1393(a) does not include corporations, even in cases other than patent cases.

The above conclusion is fortified by the fact that in certain acts of Congress, relating to special fields, there are definitions of the word "person" for the purpose of that Act; i. e., the Immigration and Nationality Act of 1952 (8 U.S.C. § 1101 et seq.) provides the following definition of "person" in Sec. 1101(b) (3), "The term 'person' means an individual or an organization."

If there could be any question about the meaning of the word "resides" as used in 28 U.S.C. § 1400(b), it is set at rest by the *Fourco Glass* case, supra, where the court stated (353 U.S. p. 226, 77 S.Ct. p. 790) that the words "inhabitant" and "resident," were "synonymous words" which "mean domicile, and, in respect of corporations, mean the state of incorporation only." See Shaw v. Quincy Mining Co., 145 U.S. 444, 12 S.Ct. 935, 36 L.Ed. 768. To the same effect are the following cases which dealt specifically with venue in patent infringement actions: C–O Two Fire Equipment Co. v. Barnes (7 Cir. 1952), 194 F.2d 410, aff'd 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 695, rehearing den. 344 U.S. 900, 73 S.Ct. 273, 97 L.Ed. 668; Brevel Products Corp. v. H & B American

Corp. (D.C.N.Y.1962), 202 F.Supp. 824, at 826; Clearasite Headwear, Inc. v. Paramount Cap Co. (D.C.N.Y.1962), 204 F.Supp. 4, at 5; Dover Corp. v. Fisher Governor Co. (D.C.Tex.1963), 221 F. Supp. 716; AMP Incorporated v. Essex Wire Corp. (D.C.Ind.1963), 223 F.Supp. 154, 155, 156; Kierulff Associates v. Luria Bros. & Co. (D.C.N.Y.1965), 240 F.Supp. 640, 641; Kearney & Trecker Corp. v. Cincinnati Milling Machine Co. (D.C.Ill.1966), 254 F.Supp. 130, 131; Vibber v. United States Rubber Co. (D.C.N.Y.1966), 255 F.Supp. 47.

In cases Nos. 66–1991, 66–1992, 66–1993, 66–1994, and 66–1995, originally filed in San Diego, the Complaint in each instance alleged that the defendant "is a California corporation and *resides* in this *judicial district* within the jurisdiction of this Court and also has a regular and established place of business at San Diego in *this judicial district* where it has committed acts of infringement herein complained of."

The answers to each of the Complaints in said cases deny the infringement but otherwise *admit* that each of said defendants is a California *corporation* and *resides within* "this judicial district" and has a regular and established place of business in "this judicial district." (In Case No. 66–1993, the answer, although using slightly different language, is substantially the same.)

Except for the allegations above mentioned concerning the place of incorporation and residence, there are no other allegations in the pleadings in those five cases which throw any light upon the residence of each defendant.

So the matter comes down to this: regardless of whether or not 28 U.S.C. § 1393(a) applies, and regardless of the meaning of the word "resides" in 28 U.S.C. § 1400(b), the plaintiff in each of the five last-numbered cases has alleged, and the defendants have admitted in each of them, that the defendant is incorporated in California, resides in this Judicial District, and has a regular and established place of business in this Judicial District. It follows that the actions "might have been brought" in this Division and District, i. e., in the Central Division of the Southern District of California as it existed prior to the effective date of the Act of March 18, 1966.[3]

Said District and Division still continue in existence for the purpose of completing litigation commenced previous to the effective date of the Act of March 18, 1966 (28 U.S.C. § 1405).

It follows that the Order Transferring said cases under 28 U.S.C. § 1404(a) to the Central Division is a proper and valid order and that this Court, sitting as the Southern District of California, Central Division, as it existed prior to the effective date of said Act of March 18, 1966, had and continues to have jurisdiction and venue of said cases originally filed in the Southern Division.

Section 1406(b) provides that if a party does not interpose a timely and sufficient objection to venue, the jurisdiction of a district court is not impaired and thus any objections to venue are waived. The defendants Non-Linear Systems, Inc., in Case No. 66–1993, and Cubic Corp. in Case No. 66–1994, did not appear and by their failure to appear upon notice, thus waived any objection to

3. In case No. 66–1996 (Daystrom, Inc.), it is alleged in paragraph 3 of the Complaint that the defendant Daystrom is a Texas corporation and has a regular established place of business in this judicial district where it has committed acts of infringement herein complained of. The answer denied infringement but admitted that it was incorporated in Texas and had a regular place and established place of business at LaJolla which was in the then Southern Division of the Southern District of California. Even so, the Court is of the conclusion that it "might have been brought" in the Central Division for the reason that LaJolla is in the Southern *District* as it then existed, and § 1400(b) puts venue in *Districts* and not in *Divisions* of a *District*.

the jurisdiction and venue of the above-entitled Court.

If the plaintiff had any right to object to the transfer (which I doubt), the point was preserved for the plaintiff by its objection, which is overruled by the instant Order.

Hoffman v. Blaski (1960), 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254, was concerned with a transfer of venue between *districts* in two cases, one of which was a patent case. The court affirmed the action of the Seventh Circuit in retransferring the *Blaski* case from the Northern District of Illinois where the defendant did not reside, did not maintain a place of business, and did not infringe the patents, and hence could not have been effectively served with process of the Northern District of Illinois under Rule 4(f) of the F.R.Civ.P., which provides that "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held * * *."

Without question, service of process of the United States District Court, Southern District of California, Central Division, could have been made upon each of the defendants in the six San Diego cases, and thus the actions "might have been brought" by the plaintiffs in the Central Division of the Southern District of California as it existed prior to the Act of March 18, 1966.

It is not without significance that only *Districts* and not *Divisions* are mentioned in both F.R.Civ.P. 4(f) and 28 U.S.C. § 1694, which latter relates to service of process in patent actions.

Hoffman v. Blaski, supra, is also authority that venue, i. e., "where [the action] might have been brought," is to be determined as of the time of the filing of the actions, which reinforces the continuance of all the within actions under 28 U.S.C. § 1405, in the Southern District of California, Central Division, as it existed prior to the effective date of the Act of March 18, 1966, passed long after such suits were filed.

## APPENDIX II.

**TECHNOGRAPH PRINTED CIRCUITS, LTD., et al., Plaintiffs,**

**v.**

**PACKARD BELL ELECTRONICS CORP., et al., Defendants.**

**Nos. 62-1256-PH, 62-1656-PH, 63-14-PH, 63-48-PH, 63-76-PH, 63-85-PH, 63-86-PH, 63-108-PH, 63-109-PH, 66-1991-PH (2829-SD-K), 66-1992-PH (2836-SD-K), 66-1993-PH (2837-SD-K), 66-1994-PH (2839-SD-K), 66-1995-PH (2840-SD-K), 66-1996-PH (2844-SD-K).**

United States District Court C. D. California.

May 15, 1967.

### ORDER TO PRODUCE EVIDENCE

HALL, District Judge.

Upon defendant Lockheed's motion for an order to produce evidence, the Court having considered the parties' briefs and affidavits, having heard arguments on the matter on April 10, 1967, and being fully advised in the premises,

It is hereby ordered that defendant Lockheed's motion be, and the same hereby is, granted; and that plaintiffs shall have until July 12, 1967 to file in this case for inspection and copying by all defendants herein, the following:

1) All documents now known to plaintiffs which were not put in evidence in the case of Technograph Printed Circuits, Ltd., and Technograph Printed Electronics, Inc., v. The Bendix Corporation and which, in the opinion of plaintiffs, are of material significance in establishing that (a) the inventions claimed in United States Patents Nos. 2,441,960, Re. 24,165 and 2,706,697, are unobvious over the prior art cited in said *Bendix* decision, contrary to the holding of the court in said *Bendix* decision; or that (b) said claims are sufficiently definite to comply with the requirements of 35 U.S.C. § 112, contrary to the holding of the court in said *Bendix* decision; or that (c) any other ground stated in said *Bendix* decision for holding any of said patents or claims invalid is clearly in error; and as to each

such document, state whether it relates to (a), (b), or (c), and if to (c), to what specific ground.

2) The names or other identification of witnesses now known to plaintiffs (together with a detailed summary of the relevant material facts not brought out in the *Bendix* case to which they are expected to testify) whom plaintiffs expect to be able to testify to material facts not presented in the *Bendix* case and tending to show, in plaintiffs' opinion, that (a) the inventions claimed in United States Patents Nos. 2,441,960, Re. 24,165 and 2,706,697, are unobvious over the prior art cited in said *Bendix* decision, contrary to the holding of the court in said *Bendix* decision; or that (b) said claims are sufficiently definite to comply with the requirements of 35 U.S.C. § 112, contrary to the holding of the court in said *Bendix* decision; or that (c) any other ground stated in said *Bendix* decision for holding any of said patents or claims invalid is clearly in error; and as to each such item of testimony, state whether it relates to (a), (b), or (c), and if to (c), to what specific ground.

3) Specifically, and in detail, the nature of the "admissions against interest" and "substantial and significant evidence" alluded to in plaintiffs' memorandum filed April 13, 1967 in opposition to this motion, which plaintiffs hope to elicit from defendant Lockheed if permitted to take appropriate discovery from Lockheed, to the extent that such "admissions" and "evidence" relate to matters not presented in the *Bendix* case which in plaintiffs' opinion, are of material significance in showing that (a) the inventions claimed in United States Patents Nos. 2,441,960, Re. 24,165 and 2,706,697, are unobvious over the prior art cited in said *Bendix* decision, contrary to the holding of the court in said *Bendix* decision; or that (b) said claims are sufficiently definite to comply with the requirements of 35 U.S.C. § 112, contrary to the holding of the court in said *Bendix* decision; or that (c) any other ground stated in said *Bendix* decision for

holding any of said patents or claims invalid is clearly in error; and as to each such admission or item of evidence, state whether it relates to (a), (b), or (c), and if to (c), to what specific ground.

4) The "evidence" which has "come to light" or "been produced" since the trial of the *Bendix* case, as referred to in Hubert L. Short's affidavit and plaintiffs' memorandum filed in opposition to this motion on April 3, 1967, specifically and in as much factual detail as plaintiffs can provide, insofar as such evidence is, in plaintiffs' opinion, of material significance in establishing that (a) the inventions claimed in United States Patents Nos. 2,441,960, Re. 24,165 and 2,706,697, are unobvious over the prior art cited in said *Bendix* decision, contrary to the holding of the court in said *Bendix* decision; or that (b) said claims are sufficiently definite to comply with the requirements of 35 U.S.C. § 112, contrary to the holding of the court in said *Bendix* decision; or that (c) any other ground stated in said *Bendix* decision for holding any of said patents or claims invalid is clearly in error; and as to each such item of evidence, state whether it relates to (a), (b), or (c), and if to (c), to what specific ground.

5) All "other evidence" as referred to in Hubert L. Short's affidavit filed April 3, 1967 in opposition to the present motion, in as much factual detail as plaintiffs can provide, to the extent that such evidence, in plaintiffs' opinion, is of material significance in establishing that (a) the inventions claimed in United States Patents Nos. 2,441,960, Re. 24,-165 and 2,706,697, are unobvious over the prior art cited in said *Bendix* decision, contrary to the holding of the court in said *Bendix* decision; or that (b) said claims are sufficiently definite to comply with the requirements of 35 U.S.C. § 112, contrary to the holding of the court in said *Bendix* decision; or that (c) any other ground stated in said *Bendix* decision for holding any of said patents or claims invalid is clearly in error; and as to each such item of evidence, state

whether it relates to (a), (b), or (c), and if to (c), to what specific ground.

6) All other matters not hereinabove listed and not presented in the *Bendix* case, in as much factual detail as plaintiffs can provide, which, in plaintiffs' opinion, are of material significance in establishing that (a) the inventions claimed in United States Patents Nos. 2,441,960, Re. 24,165 and 2,706,697, are unobvious over the prior art cited in said *Bendix* decision, contrary to the holding of the court in said *Bendix* decision; or that (b) said claims are sufficiently definite to comply with the requirements of 35 U.S.C. § 112, contrary to the holding of the court in said *Bendix* decision; or that (c) any other ground stated in said *Bendix* decision for holding any of said patents or claims invalid is clearly in error; and as to each such matter, state whether it relates to (a), (b), or (c), and if to (c), to what specific ground.

7) If plaintiffs are unable to comply with this order by July 12, 1967, the Court will consider an appropriate extension of time upon a showing of good cause by plaintiffs.

**TECHNOGRAPH PRINTED CIRCUITS, LTD., et al., Plaintiffs,**

**v.**

**PACKARD BELL ELECTRONICS CORP., et al., Defendants.**

**Nos. 62-1256-PH, 62-1656-PH, 63-14-PH, 63-48-PH, 63-76-PH, 63-85-PH, 63-86-PH, 63-108-PH, 63-109-PH, 66-1991-PH (2829-SD-K), 66-1992-PH (2836-SD-K), 66-1993-PH (2837-SD-K), 66-1994-PH (2839-SD-K), 66-1995-PH (2840-SD-K), and 66-1996-PH (2844-SD-K).**

United States District Court C. D. California.

May 15, 1967.

ORDER RESETTING SCHEDULES

HALL, District Judge.

In view of the granting, on April 10, 1967, of Lockheed's motion for an order to produce evidence, with which plaintiffs have been ordered to comply by June 12, 1967, the dates set in the Court's order entitled "Order Fixing Schedules On Motion For Summary Judgment" and dated March 13, 1967, are hereby changed as follows:

1. Lockheed's amended motion for summary judgment and the other defendants' joinders or motions for summary judgment as set out in paragraphs 3 and 4 of the aforesaid order will be due July 17, 1967 instead of May 1, 1967.

2. Plaintiffs' motions for discovery as specified in paragraph 5 of said order will be due July 31, 1967 instead of May 15, 1967.

3. Plaintiffs' opposition to the motions for summary judgment, as set out in paragraph 6 of said order will be due August 21, 1967.

APPENDIX III.

**TECHNOGRAPH PRINTED CIRCUITS, LTD., et al., Plaintiffs,**

**v.**

**PACKARD BELL ELECTRONICS CORP., et al., Defendants.**

**Nos. 62-1256-PH, 62-1656-PH, 63-14-PH, 63-48-PH, 63-76-PH, 63-85-PH, 63-86-PH, 63-108-PH, 63-109-PH, 66-1991-PH (2829-SD-K), 66-1992-PH (2836-SD-K), 66-1993-PH (2837-SD-K), 66-1994-PH (2839-SD-K), 66-1995-PH (2840-SD-K), and 66-1996-PH (2844-SD-K).**

United States District Court C. D. California.

Oct. 18, 1967.

ORDER MODIFYING ORDER OF OCTOBER 16, 1967, RE SCHEDULES

HALL, District Judge.

Upon further consideration and for good cause.

It is hereby ordered that the Order of the Court of October 16, 1967, insofar as it approves paragraph (4) of the Stipulation signed by the plaintiffs and by the attorneys for defendant Lockheed, dated October 5, 1967, is hereby stricken and in place and stead thereof,

It is hereby ordered:

(4) That no further extensions of time to the plaintiffs to comply with the

Order dated May 15, 1967 and filed on May 17, 1967 will be granted;

It is further ordered that the plaintiffs in filing any "documents" in compliance with the Order of May 15 shall specifically and with particularity indicate the paragraph, page or chapter of such document rather than a mere reference to the document and shall designate with particularity and specifically what "evidence" has "come to light" or "been produced" since the trial of the *Bendix* case as referred to in said Order of May 15, and as to all "other evidence" as referred to in said Order, and "all other matters" as referred to in said Order.

It is further ordered that upon filing the above documents and material and upon filing the designation in compliance with this Order, the plaintiffs shall relate their contentions as to how such documents, admissions, evidence and other matters bear upon and are relevant, material and competent to the issues raised on Lockheed's Motion for Summary Judgment, and shall designate which claims and elements therein of which patent they relate to.

The *Bendix* case was decided May 27, 1963. All of the cases in this Court were filed in either late 1962 or early 1963. Counsel for the plaintiffs, Mr. Blenko and associates, tried the *Bendix* case in Maryland (218 F.Supp. 1). Counsel for the plaintiffs filed approximately 70 suits on the same patents throughout the United States. Counsel for the plaintiffs having tried the *Bendix* suit and having appeared on the Chicago cases, Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc., 7 Cir., 356 F. 2d 442, are supposedly familiar with all of the evidence and all of the exhibits and all of the documents and all of the prior art which was either introduced into evidence or touched upon in the *Bendix* case. The Court of course indulges the presumption that the instant cases were not filed for harassment but that before the plaintiffs filed them they had definite and reliable knowledge that the defendants were making products which the plaintiffs believed in good faith were infringing the patents involved.

Mr. Blenko or one of his associates has appeared in the cases in this Court and in the Chicago Court, as well as in the *Bendix* case in Maryland. To further delay the requirement that the plaintiffs make the designations required by the Order of May 17 would not only burden the defendants with the delays caused to enable Mr. Blenko or Mr. Short, the maker of the Affidavit attached to the Stipulation of July 24, 1967, to prepare and try all the cases filed by plaintiffs at their convenience, but also would subject the calendars in all of the courts in which the cases were filed to the convenience of Mr. Blenko and Mr. Short.

## APPENDIX IV

## RESPONSE BY TECHNOGRAPH TO "ORDER TO PRODUCE EVIDENCE" FILED MAY 17, 1967

Technograph hereby makes response to the "Order to Produce Evidence" filed May 17, 1967, as modified, under and subject to the below-stated conditions, limitations and disabilities.

1. Lockheed's motion for "Order to Produce Evidence" was called for hearing and was granted orally on April 10, 1967. A form of order (later entered with some changes not sought by Technograph) was then proposed. Technograph objected to the proposed form for the reason, *inter alia*, that Lockheed's motion was granted (contrary to the recitation in the order) without consideration of the papers filed by Technograph in opposition to the original motion.

2. The instant proceeding is ostensibly in connection with motions for summary judgment filed by defendants in the past or in the future. Technograph hereby reserves all its rights under the Federal Rules of Civil Procedure, including Rule 56, and applicable decisions such as United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 and Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458. It hereby makes profert

of all evidence which it may adduce or offer, now or hereafter, in response to any such motion for summary judgment.

3. On November 13, 1963, Lockheed served a "Motion to Vacate Trial Setting and to Stay Proceedings" based in part upon the pendency of infringement actions filed by Technograph in the Northern District of Illinois upon the same patents in suit here. The motion was granted at the time of hearing over the objection of Technograph and a formal order was thereafter entered on December 2, 1963. Technograph has thereby been barred from having discovery in these actions, and it has been unable to obtain pertinent evidence which may reside in the files of defendants.

4. By reason of the foregoing, plaintiffs are unable to state with certainty which claims of the patents in suit are infringed. These actions were filed upon the belief that each defendant had infringed at least some claims of the patents each is charged to infringe. As presently advised, and without benefit of pre-trial discovery normally permitted by the Federal Rules of Civil Procedure, Technograph believes that claims 4 and 10 through 16 of Patent 2,706,697, claims 1 through 7 of Patent 2,441,960, and claims 1, 2, 6, 7, 11, 15 and 17 of Patent Re. 24,165 have been infringed by the defendants charged to infringe those patents.

5. Technograph is the plaintiff in a class action under Civil Rule 23 pending in the United States District Court for the Northern District of Illinois upon the same patents in issue here. Said class action will adjudicate substantial issues as to all members of the class. The defendants in these actions are *prima facie* members of the class whose interests will be adjudicated by the Illinois court. The Illinois actions are the same actions which defendants asked would be allowed to proceed in advance of these actions in 1963. The Illinois actions were diligently advanced during that several year period that these cases were stayed, and Technograph is continuing in its efforts to advance those actions.

6. Evidence set forth below has been judicially determined to raise genuine issues of material fact which, if resolved favorably to Technograph, would lead to a different result than that reached in Technograph, etc. v. Bendix, etc.; see Technograph, etc. v. Methode, etc., 7 Cir., 356 F.2d 442 and Technograph, etc. v. United States, 372 F.2d 969, 178 Ct.Cl. 543. Technograph submits that if the decision in another court (i. e. Technograph, etc. v. Bendix, etc.) is to be given any stature in this proceeding—whether called "comity", "collateral estoppel", or "res judicata"—then the decisions in Technograph, etc. v. Methode, etc. and Technograph, etc. v. United States should likewise be considered and are entitled to like deference. Such consideration and deference bar the indicated motions for summary judgment to the extent they are based on Technograph, etc. v. Bendix, etc.

I

*Documents Not In Evidence in Technograph, etc. v. Bendix, etc.*

1. Documents, including correspondence, notes and memoranda from the files of The Signal Corps Laboratories at Fort Monmouth, New Jersey, evidence that the inventions disclosed and claimed by Eisler were not obvious to the skilled scientists at the Signal Corps long after the inventions were made by Eisler and notwithstanding that the Signal Corps had access to much information from many sources which were not generally known. The documents evidence that it was only after the Signal Corps received information on the Eisler etched foil methods in 1948 and 1949 through Sprague Electric and TRE 2117 that it changed direction of its entire efforts and directed those efforts to the Eisler technique. The documents as a continuous group are relevant to show that the Eisler inventions were unobvious and that the Eisler patents were not issued in contravention of 35 U.S.C. § 102(b)

and 103 as urged in Lockheed's motion for summary judgment. The original documents are contained in file jackets identified as follows (aggregating more than 3000 pages):

(a) Kenyon Instrument Co. Cont. W36–039 Sc 33659 (Original Notes).

(b) Printed Circuits 1947–3–26–01–701.

(c) Printed Circuits 1948–3–26–01–701.

(d) Proj. Printed Circuits 1949–3–26–01–701.

(e) Kenyon Instrument Co. Cont. W36–039–Sc 33659.

(f) Proj. Printed Circuits (Transitory) 1950–3–26–01–701.

(g) Proj. Printed Circuits 1950–3–26–01–701.

(h) 1951 (Trans)

(i) Proj. Printed Circuits 1951–3–26–01–701.

(j) Proj. Printed Circuits 1952–3–26–01–701.

(k) Proj. Printed Circuits 1953–3–26–01–701.

(l) Proj. Printed Circuits 1954–1955–3–26–01–701.

(m) Proj. Printed Circuits 1956–3–26–01–701.

2. There are additional documents in the files of the Signal Corps which have not yet been seen by Technograph but which are believed to further show that the decision in Technograph, etc. v. Bendix, etc. was erroneous in fact. Counsel for Technograph have just been advised that some such documents may be inspected at a mutually convenient time yet to be fixed.

3. "Printed Circuit Conductor Systems" by Tom D. Schlabach, Supervisor Chemical Research Laboratory, Bell Telephone Laboratories, Murray Hill, New Jersey. Electronic Packaging and Production. (August 1964 Pages 20–25) (September 1964 Pages 19–20).

This article discusses the Etched Foil Process; Plated Process; Stamped Wiring Process; Pressed Powder Process; Flame Sprayed Wiring Process; Sintered Wiring Process; and characteristics of foil conductors. The document shows that the inventions of '697 are unobvious; that printing and etching of a copper clad foil for electrical circuitry was not old as stated in the Bendix decision; foil is defined contrary to that in the Bendix decision; and that the Eisler patents were not issued in contravention to 35 U.S.C. §§ 102(b) and 103 as urged in Lockheed's motion for summary judgment.

4. United States Patent No. 3,170,225 issued February 23, 1965, W. F. M. Gray et al., Pittsfield, Mass. (Columns 1–8).

The document discusses the use of strip foil to provide strength and better electrical properties and shows that such material has substantial advantage in electrical manufacturing. The showing is contrary to the factual premise in *Bendix*, which erroneously equated material deposited in situ with foil.

5. United States Patent No. 3,103,138 issued September 10, 1963, John W. Wallace, Orchard Park, N. Y. (Columns 1–5).

The document relates to metallic foil thickness control apparatus and gives illustrations of foil thicknesses. This document is relevant in connection with the other documents relating to foil to show that foil has a distinct meaning contrary to the premise stated in the *Bendix* decision.

6. United States Patent No. 3,183,-563 issued May 18, 1965, H. R. Smith, Jr., Piedmont, California relating to apparatus for continuous foil production by vapor deposition.

United States Patent No. 3,181,209 issued May 4, 1965, H. R. Smith, Jr., Piedmont, California relating to foil production.

United States Patent No. 3,270,381 issued September 6, 1966, H. R. Smith, Jr., Piedmont, California relating to the production of ductile foil.

Military Specification, "Plastic Sheet, Laminated, Copper-Clad (For Printed Wiring)" (Pages 1–35). MIL–P–1349D,

18 June 1965 SUPERSEDING MIL-P-1349C 27 August 1963.

"Bonding Thin Films and Small Foils" by C. Robert Sargeant, General Electric Company, Bloomington, Illinois and Paul San Clemente, The Sippican Corporation, Marion, Mass., Electronic Packaging and Production, March 1964, (Pages 28–33).

United States Patent No. 3,263,319 issued August 2, 1966, W. H. Tifft et al., Belmont, California relating to method of cold deep drawing metal foil.

"Explore Thin-laminate Properties", Electronic Design, February 15, 1967, (Pages 84–88).

"Thin-Film Circuits" by Rudolf E. Thun, William N. Carroll, Charles J. Kraus, Jacob Riseman, and Edward S. Wajda, Microelectronics, Copyright 1963, McGraw-Hill Book Company.

The foregoing documents show that foil is not the equivalent of film and establish concepts involved in the manufacture of foil. Those concepts are contrary to those erroneously relied upon in the decision in *Bendix*.

7. United States Patent No. 3,244,795, issued April 5, 1966, P. R. Latimer, Charlotte, N. C. relating to stacked, laminated printed circuit assemblies.

United States Patent No. 3,149,021 issued September 15, 1964, George J. Goepfert et al., Cincinnati, Ohio relating to panel for printed circuits.

United States Patent No. 3,244,581 issued April 5, 1966, R. E. Miller, Boston, Mass. relating to laminate for fabricating etch-printed circuits.

United States Patent No. 3,335,050 issued August 8, 1967, H. S. Makowski et al. relating to plastic bonded copper foil and process for producing same.

The foregoing documents evidence that use of the Eisler inventions enables foil (when defined in the same manner as by Eisler and other workers in the art) to be adhered and bonded to an insulating substrate in a manner suitable for making electrical and electronic circuitry, and that use of a film is not the equivalent of the inventions disclosed and claimed by Eisler. The failure of the Court in *Bendix* to so understand evidences that the Eisler conceptions were unknown inventions and rise above mere skill in the art.

8. United States Patent No. 3,264,152 issued August 2, 1966, A. W. Haydon, Milford, Conn. (Columns 1–8).

United States Patent No. 3,148,098 issued September 8, 1964, F. J. Beste, Jr., Timonium, Md. (Columns 1–6).

United States Patent No. 3,037,181 issued May 29, 1962, E. Leshner, Philadelphia, Penna. (Columns 1–6).

United States Patent No. 3,193,166 issued July 6, 1965, K. A. Bickel et al., Reynoldsburg, Ohio (Columns 1–10).

United States Patent No. 3,217,089 issued November 9, 1965, J. T. Beck, White Bear Lake, Minn.

United States Patent No. 3,234,629 issued February 15, 1966, J. C. Wheeler, Topsfield, Mass. (Columns 1–4).

United States Patent No. 3,230,612 issued January 25, 1966, R. R. Potter et al., Harrisburg, Pa. (Columns 1–12).

The foregoing documents evidence that the word "component" has a fixed and certain meaning in the electronics industry. The documents show that the word "component" as used in connection with etched foil printed circuits is clear, definite and unambiguous to those skilled in the art and that the contrary holding in *Bendix* is wrong in fact. Accordingly, the holding there of invalidity under 35 U.S.C. § 112 is likewise erroneous.

9. United States Patent No. 3,184,650 issued May 18, 1965, M. E. Ecker, Palmyra, N. J. (Columns 1–8).

United States Patent No. 3,165,673 issued January 12, 1965, J. H. Teaf, Merchantville, N. J. (Columns 1–6).

"Ultrahigh-speed IC's Require Shorter, Faster Interconnections" By Emory C. Garth and Ivor Catt, Motorola Semiconductor Products Division, Motorola, Inc., Phoenix, Ariz.—Electronics, July 11, 1966.

The foregoing documents evidence that the relationship between separate conductive paths is significant to the op-

eration of apparatus employing printed circuits, e. g., to avoid unwanted phase shift, cross talk, and time delays by changes of inductance and capacitance between conductors. The documents thereby show that the decision in *Bendix* is erroneous in fact in failing to recognize the same.

10. "Printed Circuits Handbook" edited by Clyde F. Coombs, Jr., Manager, Corporate Process Engineering, Hewlett-Packard Company, Copyright 1967—McGraw-Hill, Inc.

This document evidences that the successive steps in printed circuit manufacture are critical (pp. 3–1 et seq.) contrary to the statements in *Bendix*. It shows (pp. 4–2 to 4–38) that the use of the inventions of Patent 2,706,697 makes possible the use of plated through holes thereby achieving an acceptable result not obtainable using prior art alleged in *Bendix* to be a full equivalent. The document further shows (pp. 2–2 to 2–34) metal foil is completely distinct from films, contrary to the decision in *Bendix*. It shows (pp. 1–9 to 1–11, 1–19 to 1–26, 1–29 to 1–32) conductor paths and lead lines are significant and critical contrary to the *Bendix* decision. The document taken as a whole, evidences that the Eisler inventions were not obvious at the time they were made and that the claims speak in definite and certain language, thereby showing that the contrary holdings of invalidity in *Bendix* under 35 U.S.C. §§ 102, 103 and 112 are wrong in fact.

11. Proceedings of the Technical Program, National Electronic Packaging and Production Conference, Long Beach, California, June 8, 9, 10—1965, Copyright 1965 by Industrial and Scientific Conference Management, Inc., Chicago, Illinois "The Influence of Manufacturing Tolerances on Multi-Layer Design" by R. R. Douglas, Advanced Circuitry Division, Litton Industries. (Pages 196–205);

"Parallel-Gap Soldering—An Advanced Technique for Interconnecting Integrated Circuits" by F. A. Keister, Hughes Aircraft Company, Culver City, California. (Pages 227–239).

Proceedings—1964 Electronic Components Conference, Washington, D. C., May 5, 6, 7—1964, Copyright 1964 by The Institute of Electrical and Electronics Engineers, Inc. New York City.

"Interconnection of Integrated Circuit Flat Packs in Autonetics Improved Minuteman Program" by Elise F. Harmon, Data Systems Division, Autonetics, Division of North American Aviation, Inc., Anaheim, California. (Pages 135–144).

Electronics Construction Techniques, Copyright 1966 by Holt, Rinehard and Winston, Inc. by George L. Ritchies (Pages v–vi; 97–127).

The Story of Microelectronics, Copyright 1966 by North American Aviation, Inc. by M. S. Parks (Pages 14–26).

Proceedings of the National Electronics Conference, Chicago, Illinois, October 28, 29, and 30—1963, Copyright 1963 by The National Electronics Conference, Inc. "A Nanosecond Parallel-Parallel Binary Adder Implemented with Current Mode Logic Building Blocks" by W. C. Seelbach, and K. E. Lampathakis, Motorola Semiconductor Products Division, Phoenix, Arizona (Pages 311–340).

Printed and Integrated Circuitry, Copyright 1963 by McGraw-Hill Book Company by T. D. Schlabach and D. D. Rider, Bell Telephone Laboratories, (Pages v–vii; 83–101).

Printed Circuits in Space Technology, Copyright 1962 by Prentice-Hall, Inc. by Albert E. Linden, Manager, Aerospace Support Systems Development, General Electric Company. (Pages 1–3; 109–111; 161–175).

Advances in Electronic Circuit Packaging, Volume 4, Proceedings of the 1963 Electronic Circuit Packaging Symposium, August 14–16, 1963, Copyright 1964 by Rogers Publishing Company.

"Multilayer Printed Circuits" by George Messner, Photocircuits Corporation, Glen Cove, New York. (Pages 210–224).

"A New Flat Package for Monolithic Integrated Circuits" by Glen R. Madland, Motorola Semiconductor Products Division, Phoenix, Arizona. (Pages 288–293).

Advances in Electronic Circuit Packaging, Volume 6, 6th International Electronic Circuit Packaging Symposium, August 23–24, 1965, Copyright 1965 by Rogers Publishing Company.

"A High-Density Intraconnection System for Multilayer Printed Wiring" by J. C. Eckhardt and W. L. Yessa, Automatic Electric Laboratories, Inc., Northlake, Illinois. (Pages 13–1–13–15).

"Mechanical Design Considerations For a Commercial Integrated Circuit Digital Computer" by R. Lawrence, The Bunker-Ramo Corporation. (Pages 18–1–18–15).

"Hybrid Microelectronic Design for Optimum Performance" by Darryl W. Thompson, TRW Systems Group, TRW, Inc., Redondo Beach, California. (Pages 20–1–20–25).

Printed Circuit Laboratory Manual by A. D. Andrade, et al, Sandia Corporation, Livermore, California, March 1965.

Synthane Corporation—brochure.

Industrial Circuits Company, Copyright 1963 Industrial Circuits Company Brochure.

Multilayer Printed Circuit Boards, Technical Manual, Copyright March 1966 by The Institute of Printed Circuits. (Pages 3–28).

Design Guide for Multilayer Circuits, by The Institute of Printed Circuits, Inc.

IEEE Transactions on Product Engineering and Production, Volume PEP–8, April, 1964, Number 1, Copyright 1964 by The Institute of Electrical and Electronics Engineers, Inc.

"Multilayer Printed Circuit Interconnection Techniques" by Alfred Levy, Production Engineering, Defense Electronic Prod., Radio Corporation of America, Camden, N. J. (Pages 16–20).

The foregoing documents evidence and identify the state of the art at this time in electronic network packaging. They show that the Eisler inventions—particularly those claimed in Patent 2,706,-697—are critical to present day manufacture and that such manufacture is based upon the inventions of Eisler and not anything disclosed by the prior art. The noted sections of the foregoing documents evidence that the Eisler inventions are unobvious; that the claims of the Eisler patents are sufficiently definite to comply with the requirements of 35 U.S.C. § 112; and that they were not issued *in contravention* to 35 U.S.C. §§ 102(b) and 103 as urged in Lockheed's motion for summary judgment.

12. Documents reproduced on two spools of microfilm in boxes identified as Box "1E" and Box "4E".

The documents taken as a running whole evidence meetings in Washington, D. C. with the Electronics Division of the Bureau of Standards; correspondence with the Signal Corps and other documents during the period in which the Signal Corps shifted its direction to the etched foil technique; the state of the art from 1944 through the early 1950's and its failure to teach the Eisler inventions; delineation of the meaning of foil contrary to that in the *Bendix* decision; correspondence regarding Dr. Eisler's manuscript on printed circuits; statements by those skilled in the art recognizing Dr. Eisler's contributions; use of the word "component" contrary to that set forth in the *Bendix* decision; and correspondence leading up to TRE 2117 which was given to the Signal Corps which had previously been struggling for a solution to the problem solved by Eisler. The documents, when taken as a whole, show that the inventions of '697 are unobvious; that the claims of '697 are sufficiently definite to comply with the requirements of 35 U.S.C. § 112; and that '697 was not issued in contravention to 35 U.S.C. §§ 102(b) and 103 as urged by Lockheed.

## II

### *Names of Witnesses Now Known to Plaintiffs*

1. Witnesses who have testified by affidavit in Technograph, etc. v. Meth-

ode, etc. and Technograph, etc. v. United States:

(a) William L. Evirett

(b) Thomas D. Jolly

(c) John C. Pitzer

(d) Hubert L. Shortt

(e) George R. Town

(f) Everard M. Williams

The testimony of said witnesses is set forth in their affidavits. Those affidavits show that the inventions of the Eisler patents are unobvious; that the claims thereof are sufficiently definite to comply with the requirements of 35 U.S.C. § 112; and that they were not issued in contravention to 35 U.S.C. §§ 102(b) and 103 as urged in Lockheed's motion for summary judgment. Said affidavits have been judicially determined to raise genuine issues of material fact against the decision in Technograph, etc. v. Bendix, etc.

2. Testimony of Stanislaus F. Danko and Moe Abramson taken in Technograph, etc. v. United States on June 27–8, 1967, to the same effect as the foregoing. Their testimony further evidences that the Eisler inventions were not obvious to the Signal Corps despite its access to public and private information.

3. Technograph believes that the authors of documents identified herein, if called as witnesses, would testify to the same effect and would confirm their writings.

III

*Nature of Admissions Against Interest and Other Evidence Originating with Lockheed*

(1) The following listed documents stem from Lockheed or its employees and constitute admissions against interest by Lockheed. Said documents, when taken as a whole, show that the inventions of the Eisler Patents are unobvious; that the claims are sufficiently definite to comply with the requirements of 35 U.S.C. § 112; that foil is different from film, contrary to statements in the *Bendix* decision; and that the Eisler patents were not issued in contravention of 35 U.S.C. §§ 102(b) and 103 as urged by Lockheed.

"An Engineer's Guide to Printed Circuit Board Design", copyrighted 1965, by Lockheed Electronics Company, a Division of Lockheed Aircraft Corporation. (Pages 1–11).

Proceedings of the National Electronics Conference, volume XVIII October 8, 9, 10, 1962, pages 296–307.

"Thin Film Technologies for Electronic Components" W. D. Fuller, Electronic Sciences Laboratory, Lockheed Missiles & Space Company, Palo Alto, California.

"Welding of Fine Leads to Thin Films" by Hans M. Wagner. Lockheed Missiles and Space Company prepared for NEP/CON 1965, Los Angeles, California (Pages 1–8).

"Printed-Circuit Boards: A Guide to Fabricating Techniques—Lockheed Aircrafts' Missiles and Space Division, a heavy user of printed-circuit boards, undertook an evaluation of board-manufacturing methods. In this two-part series, author Prise presents, first, the step-by-step fabrication procedures and, in part 2, the survey's findings and recommendations." Published in Electronic Design (November 22, 1961 Pages 42–45) and (December 6, 1961).

1965 Proceedings Electronics Components Conference, Washington, D. C., Copyright 1965—The Institute of Electrical and Electronics Engineers, Inc. "Universal Component Packaging System" by W. A. Koenig, Lockheed Missile & Space Company Sunnyvale, California (Pages S230–236).

Advances in Electronic Circuit Packaging, Proceedings of the Third International Electronic Circuit Packaging Symposium, August 15–17, 1962, Boulder, Colorado, Copyright 1963—Rogers Publishing Co., Inc.

"Microelectronics and Megaheadaches" by Kenneth L. Jones and Edward F. Uber, Lockheed Missiles & Space Com-

pany, Sunnyvale, California (Pages 277–294).

Proceedings of the Technical Program, National Electronic Packaging and Production Conference, June 21, 22, 23, 1966, New York City, Copyright 1966—Industrial and Scientific Conference Management, Inc.

"TEC 2, A Packaging Scheme for Special Purpose Data Processors Using Integrated Circuits" by R. J. Ransil, Lockheed Missiles & Space Company, Sunnyvale, California (Pages 72–79).

Proceedings of the Technical Program, National Electronic Packaging and Production Conference, June 9, 10, 11, 1964, New York City, Copyright 1964—Industrial and Scientific Conference Management, Inc.

"The Role the Connector Plays in Modular Packaging" by D. S. Goodman, Design Engineer, Senior, Lockheed Missiles & Space Co. (Pages 47–54) and

A Buyer's Guide to Printed Circuits, brochure by Lockheed Electronics Company.

United States Patent No. 3,180,807 issued April 27, 1967, R. A. Quinn, Palo Alto, California assigned to Lockheed Aircraft Corporation (Columns 1–8).

United States Patent No. 3,267,333, issued August 16, 1966, D. L. Schultz, Dunellen, New Jersey and assigned to Lockheed Aircraft Corporation. (Columns 1–4).

(2) Technograph believes that other admissions against interest could be obtained from the files of Lockheed and other defendants herein if it were permitted to have full discovery of said defendants.

## IV

### *Evidence Which Has Come to Light Since the Trial in Bendix*

The *Bendix* case was tried in 1961. All of the documents and other evidence referred to herein and bearing later dates has plainly come to light since that time. The documents obtained from the Signal Corps, and contained upon the microfilm spools have, with a few limited exceptions, been obtained since the trial in *Bendix*. Said evidence is pertinent to the decision in *Bendix* for reasons stated in respect to such evidence.

## V

### *"Other Evidence"*

(1) Evidence other than publications is set forth in part above in the form of affidavits and testimony.

(2) At the time of argument Technograph, etc. v. Bendix, etc. in the United States Court of Appeals for the Fourth Circuit, counsel for Bendix conceded that the lower court had erred in holding that the Stevens and Dallas defense (the only defense sustained under 35 U.S.C. § 102) was applicable to patent 2,706,697.

(3) Technograph believes that further evidence can be produced showing that the alleged equivalency of "foil", "film", and "metallised or metal coated paper" is erroneous in fact.

Dated: November 27, 1967.

(s) R. Welton Whann
One of Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing RESPONSE BY TECHNOGRAPH TO "ORDER TO PRODUCE EVIDENCE" FILED MAY 17, 1967, was this day served upon all the counsel for defendants on the attached list by mailing, postage prepaid, copies thereof to said counsel at the addresses indicated.

Dated this 27th day of November, 1967.

(s) R. Welton Whann
One of Plaintiffs' Attorneys